IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEEE
WESTERN DIVISION

---

GREEN BALLAST, INC., a for profit corporation

    Plaintiff,

Vs.                                                         Case No.:

WILLIAM H. BETHELL, Individually,
GNAC, LLC, a Limited Liability Company,
NICK BUSSANICH, Individually,
And Various JOHN DOES,

    Defendants

---

## COMPLAINT

---

TO THE HONORABLE DISTRICT COURT JUDGES FOR THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION, comes now GREEN BALLAST, INC. (Green Ballast) and files this Complaint for Breach of Contract, Conspiracy, Tortious Interference with Business Relationship, Tortious inducement or procurement of Breach of Contract pursuant to T.C.A. §47-50-109; Breach of Fiduciary Duty of a Director or Officer of a Corporation pursuant to T.C.A. §48-18-301 and 48-18-403, Breach of Duty of Loyalty, and money damages, both compensatory and punitive. In support of its complaint, the Plaintiff would respectfully show this Honorable Court the following:

### I. JURISDICTION AND VENUE

1.    Pursuant to 28 U.S.C. §1332, jurisdiction is proper on the following bases:

    a.    The matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs;

    b.    Green Ballast is a Delaware corporation with its principal place of business located in Memphis, Tennessee;

    c.    Defendant, William H. Bethell (Bethell) is an adult resident of Massapequa Park, Nassau County, New York;

    d.    Defendant, Bethell may be served with process at 211 Pine Street, Massapequa Park, New York, 11762.

    e.    Defendant, GNAC, LLC is a Delaware limited liability company (GNAC) with its principal place of business located in Nassau County, New York;

    f.    Upon information and belief, the only member of Defendant, GNAC, is Bethell, a resident of Massapequa Park, Nassau County, New York;

    g.    Defendant, GNAC may be served with process through its Registered Agent, Business Filings Incorporated, 108 West 13th Street, Wilmington, Delaware, 19801;

    h.    Defendant, Nick Bussanich (Bussanich) is an adult resident of Manalapan, Monmouth County, New Jersey;

    i.    Defendant, Bussanich, may be served with process at 4 Birmingham Drive, Manalapan, New Jersey, 07726;

2.    Pursuant to 28 U.S.C. §1391, jurisdiction is proper because a substantial part of the events giving rise to the claims occurred in this judicial district.

## II. FACTS

3. Bethell became employed with Green Ballast on April 15, 2013, and entered into that certain Green Ballast, Inc. Non-competition Agreement as of June 23, 2011, as the Chief Financial Officer.

4. Bethell is a Director of Green Ballast.

5. As a condition of his employment with Green Ballast, Bethell executed a Non-Competition Agreement (the Bethell Non-Compete).

6. A true and complete copy of the Bethell Non-Compete is attached hereto as Exhibit A.

7. Paragraph 2 of the Bethell Non-Compete provides in part that:

> During the term of his ... employment with the Company [Green Ballast], Employee [Bethell] will not, directly or indirectly, participate in the management, operation, financing or control of, or be employed by or consult for or otherwise render services to, any individual or entity that competes with the Company in the Restricted Area in the conduct of the business of the Company as conducted or as proposed to be conducted, nor will Employee engage in any other activities that conflict with his ... obligations to the Company.
>
> In addition, for a period of one (1) year after the date of his ... employment with the Company ends for any reason, Employee will not, directly or indirectly, participate in the management, operation, financing or control of, or be employed by or consult for or otherwise render services to, any Conflicting Organization in the Restricted Area in connection with or relating to the a Conflicting Product.

8. Paragraph 5 of the Bethell Non-Compete provides:

> Injunctive Relief. Employee [Bethell] Employee acknowledges and agrees that failure to adhere to the terms of this Agreement will cause the Company [Green Ballast] irreparable damage for which monetary damages alone would be inadequate compensation. Therefore, Employee agrees that in addition to monetary damages, the Company will be entitled to an injunction and other equitable relief, including *ex parte* injunctive relief, in the event of any breach or threatened breach (such threatened breach being determined in the sole judgment of the company) of the provisions of this Agreement. Employee waives the making of a bond or showing actual damages as a condition for obtaining injunctive relief. Such remedy shall not be deemed the exclusive remedy for the breach of this Agreement by Employee, but will be in addition to all other remedies available at law or in equity to the Company. Additionally, if Employee breaches this Agreement, the Company will be entitled to its reasonable attorney's fees and costs associated with enforcing this

Agreement. Notwithstanding any judicial determination that any provision of this Agreement is not specifically enforceable, the Company will nonetheless be entitled to recover monetary damages as a result of any breach by Employee.

8. As a condition of his employment with Green Ballast, Bethell executed a Non-Disclosure and Proprietary rights Agreement (the Bethell Non-Disclosure).

9. A true and correct copy of the Bethell Non-Disclosure is attached hereto as Exhibit B.

10. Paragraph 2 of the Bethell Non-Disclosure provides in part that

> At all times during his . . . employment with the Company [Green Ballast] and thereafter, Employee [Bethell] will hold the Confidential Information in strictest confidence and employee will not disclose, communicate, . . . publish . . . transmit . . . or use Confidential Information. . .
>
> "Confidential Information" means, but is not limited to all information . . . which relates to the Company's [Green Ballast's] existing or potential business, . . . Confidential Information also includes, but is not limited to . . . all information regarding the Company's operations, research and development efforts, plans for products or services, methods of doing business, business strategies, customers, suppliers, service providers, manufacturers, business relations, product prices and costs, markets, marketing plans, budgets and forecasts, financial information and/or Inventions, as well as information regarding the sills, know how and compensation of other employees of the Company.

11. Paragraph 11 of the Bethell Non-Disclosure provides in part that

> During the term of his . . . employment with the Company [Green Ballast], Employee [Bethell] will not, directly or indirectly, participate in the management, operation, financing or control of, or be employed by or consult for or otherwise render services to, any person or entity that competes anywhere in the world with the Company in the conduct of the business of the Company as conducted or as proposed to be conducted (a "Competing Business"), nor will Employee engage in any other activities that conflict with his . . . obligations to the Company.

12. Paragraph 12 of the Bethell Non-Disclosure provides:

> Non-Solicitation. During the term of his . . . employment by the Company[Green Ballast] and for a period of one (1) year after the date of his . . . employment with the Company ends for any reason, Employee [Bethell] will not, directly or indirectly, (a) hire, engage or solicit to hire or engage any individual who is engaged as a contractor or consultant or employed by the company or who was engaged as a contractor or consultant or employed by the company within six months of the proposed solicitation, hire or engagement, (b)

4

      otherwise induce or attempt to induce any individual who is engaged as a contractor or consultant or employed by the company to terminate such engagement or employment, (c) in any way interfere with the relationship between the Company and any individual who is engaged as a contractor or consultant or employed by the company; (d) contact, solicit, divert, appropriate or call upon with the intent of doing business with (other than for the exclusive benefit of the Company) any customer of the company if the purpose of such activity is to solicit such customer or prospective customer for a Competing Business, to encourage such customer to discontinue, reduce or adversely alter the amount of such customer's business with the company or to otherwise interfere with the Company's relationship with such customer, or (e) in any way interfere with the Company's relationship with any supplier, manufacturer, service provide or other business relation of the Company.

13.       <u>Injunctive Relief</u>. Employee [Bethell] acknowledges and agrees that failure to adhere to the terms of this Agreement will cause the Company [Green Ballast] irreparable damage for which monetary damages alone would be inadequate compensation. Therefore, Employee agrees that in addition to monetary damages, the Company will be entitled to an injunction and other equitable relief, including *ex parte* injunctive relief, in the event of any breach or threatened breach (such threatened breach being determined in the sole judgment of the company) of the provisions of this Agreement. Employee waives the making of a bond or showing actual damages as a condition for obtaining injunctive relief. Such remedy shall not be deemed the exclusive remedy for the breach of this Agreement by Employee, but will be in addition to all other remedies whether at law or in equity to the Company. Additionally, if Employee breaches this Agreement, the Company will be entitled to its reasonable attorney's fees and costs associated with enforcing this Agreement. Notwithstanding any judicial determination that any provision of this Agreement is not specifically enforceable, the Company will nonetheless be entitled to recover monetary damages as a result of any breach by Employee.

14. On or about June 21, 2013, Bethell resigned his employment with Green Ballast.

15. Upon Bethell's resignation, Bethell and Green Ballast entered into negotiations regarding a separation agreement.

16. On or about June 23, 2013 at 12:51p.m., Green Ballast sent Bethell a proposed separation agreement (the Proposed Separation Agreement).

17. Exhibit C attached hereto is a true and correct copy of the e-mail sending Bethell the Proposed Separation Agreement referenced in paragraph 16 hereof.

18. On or about June 23, 2013 at 1:34p.m., Bethell requested some changes to the Proposed Separation Agreement.

19. Exhibit D attached hereto is a true and correct copy of the e-mail from Bethell referenced in paragraph 18 hereof.

20. On or about June 24, 2013, Green Ballast accepted Bethell's requested changes to the Proposed Separation Agreement in an e-mail.

21. Exhibit E attached hereto is a true and correct copy of the June 24, 2013 e-mail from Green Ballast to Bethell referenced in paragraph 20 hereof.

22. On June 24, 2013 at 10:25a.m., Bethell confirmed his resignation from Green Ballast in an e-mail.

23. Exhibit F attached hereto is a true and correct copy of the e-mail from Bethell to Green Ballast referenced in paragraph 22 hereof.

24. On June 24, 2013 at 9:36a.m., Bethell advised a third party that he was "leaving Green Ballast today."

25. Exhibit G attached hereto is a true and correct copy of the e-mail from Bethell to a third party referenced in paragraph 24 hereof.

26. On June 28, 2013 at 11:43a.m., Bethell denied that he had resigned from Green Ballast in an e-mail.

27. Exhibit H attached hereto is a true and correct copy of the e-mail from Bethell to Green Ballast referenced in paragraph 26 hereof.

28. On July 1, 2013, Bethell was notified in writing that he had been terminated from Green Ballast for cause.

29. Exhibit I is a true and correct copy of the Notice of Termination sent to Bethell on July 1, 2013.

30. On July 15, 2013, Bethell formed GNAC, LLC, a Delaware limited liability company.

31. Exhibit J attached hereto is a true and correct copy of the formation documents for GNAC, LLC.

32. Bethell induced Rich Compoto, an independent contractor for Green Ballast, to obtain quotes for lighting products for Bethell and Bussanich.

33. As of the date of the filing of this Complaint, Bethell remains a Director of Green Ballast.

34. While still a Director of Green Ballast, Bethell assembled a group to acquire and hold Green Ballast's debt in an effort to gain control over Green Ballast.

35. Bethell failed to advise the Board of Directors at Green Ballast that he was actively trying to assume control of Green Ballast prior to initiating efforts to do so.

36. Upon information and belief, Bethell has been competing with Green Ballast by soliciting sales, from some or all of Green Ballast customers, in violation of the Bethell Non-Compete.

37. Upon information and belief, Bethell communicated with investors, potential investors, customers and significant Green Ballast employees without the Board of Directors' or the CEO's knowledge.

38. Upon information and belief, Bethell criticized the CEO in Bethell's communications with investors, potential investors, customers and significant Green Ballast employees with statements he knew to be untrue or with reckless disregard for the truth.

39. Upon information and belief, Bethell criticized Green Ballast management in Bethell's communications with investors, potential investors, customers and significant Green Ballast employees with statements he knew to be untrue or with reckless disregard for the truth.

40. Upon information and belief, Bethell shared non-public and Confidential Information, critical of the Green Ballast's CEO with third parties and with statements he knew to be untrue or with reckless disregard for the truth.

41. Upon information and belief, Bethell shared non-public and Confidential Information critical of the direction of the Green Ballast with third parties and with statements he knew to be untrue or with reckless disregard for the truth.

42. Upon information and belief, Bethell undermined investors', potential investors' and other third parties' confidence in the management of Green Ballast by communicating or publishing statements he knew to be untrue or with reckless disregard for the truth.

43. Upon information and belief, Bethell's actions undermined and interfered with investors', potential investors' and other third parties' relationships with Green Ballast by communicating or publishing statements he knew to be untrue or with reckless disregard for the truth.

44. Upon information and belief, Bethell's actions held up investor cash investment into Green Ballast.

45. Upon information and belief, Bethell advised potential investors not to invest in Green Ballast.

46. Upon information and belief, Bethell communicated with employees, investors and other shareholders to enlist support to remove the CEO and assume control over Green Ballast.

47. Upon information and belief, Bethell attempted to purchase Green Ballast debt without consulting the Board of Directors.

48. Upon information and belief, Bethell communicated false information to a Green Ballast creditor pertaining to an investor's alleged negative opinion of Green Ballast CEO.

49. Upon information and belief, Bethell directly and intentionally influenced significant company employees and contractors to be uncooperative with Green Ballast management.

50. Upon information and belief, Bethell directly and intentionally influenced significant employees to terminate their employment with Green Ballast.

51. Upon information and belief, Bethell willfully and maliciously issued a press release attempting to portray Green Ballast in a bad light with the intent to harm Green Ballast, its management team, shareholders and Board of Directors.

52. Nick Bussanich (Bussanich) became employed with Green Ballast on June 23, 2011.

53. Bussanich served as Vice President of Business Development for Green Ballast.

54. As a condition of his employment with Green Ballast, Bussanich executed a Non-Competition Agreement (the Bussanich Non-Compete).

55. A true and complete copy of the Bussanich Non-Compete is attached hereto as Exhibit K.

56. Paragraph 2 of the Bussanich Non-Compete provides in part that:

> During the term of his ... employment with the Company [Green Ballast], Employee [Bussanich] will not, directly or indirectly, participate in the management, operation, financing or control of, or be employed by or consult for or otherwise render services to, any individual or entity that competes with the Company in the Restricted Area in the conduct of the business of the Company as conducted or as proposed to be conducted, nor will Employee engage in any other activities that conflict with his ... obligations to the Company.
>
> In addition, for a period of one (1) year after the date of his ... employment with the Company ends for any reason, Employee will not, directly or indirectly, participate in the management, operation, financing or control of, or be employed by or consult for or otherwise render services to, any Conflicting Organization in the Restricted Area in connection with or relating to the a Conflicting Product.

57. Paragraph 5 of the Bussanich Non-Compete provides:

> <u>Injunctive Relief</u>. Employee [Bussanich] acknowledges and agrees that failure to adhere to the terms of this Agreement will cause the Company [Green Ballast] irreparable damage for which monetary damages alone would be inadequate compensation. Therefore, Employee agrees that in addition to monetary damages, the Company will be entitled to an injunction and other equitable relief, including *ex parte* injunctive relief, in the event of any breach or threatened breach (such threatened breach being determined in the sole judgment of the company) of the provisions of this Agreement. Employee waives the making of a bond or showing actual damages as a condition for obtaining injunctive relief. Such remedy shall not be deemed the exclusive

remedy for the breach of this Agreement by Employee, but will be in addition to all other remedies available at law or in equity to the Company. Additionally, if Employee breaches this Agreement, the Company will be entitled to its reasonable attorney's fees and costs associated with enforcing this Agreement. Notwithstanding any judicial determination that any provision of this Agreement is not specifically enforceable, the Company will nonetheless be entitled to recover monetary damages as a result of any breach by Employee.

58. As a condition of his employment with Green Ballast, Bussanich executed a Non-Disclosure and Proprietary Rights Agreement (the Bussanich Non-Disclosure).

59. A true and correct copy of the Bussanich Non-Disclosure is attached hereto as Exhibit L.

60. Paragraph 2 of the Non-Disclosure provides in part that:

> At all times during his . . . employment with the Company [Green Ballast] and thereafter, Employee [Bussanich] will hold the Confidential Information in strictest confidence and employee will not disclose, communicate, . . . publish . . . transmit . . . or use Confidential Information. . .
>
> "Confidential Information" means, but is not limited to all information . . . which relates to the Company's [Green Ballast's] existing or potential business, . . . Confidential Information also includes, but is not limited to . . . all information regarding the Company's operations, research and development efforts, plans for products or services, methods of doing business, business strategies, customers, suppliers, service providers, manufacturers, business relations, product prices and costs, markets, marketing plans, budgets and forecasts, financial information and/or Inventions, as well as information regarding the sills, know how and compensation of other employees of the Company.

61. Paragraph 11 of the Bussanich Non-Disclosure provides in part that:

> During the term of his . . . employment with the Company [Green Ballast], Employee [Bussanich] will not, directly or indirectly, participate in the management, operation, financing or control of, or be employed by or consult for or otherwise render services to, any person or entity that competes anywhere in the world with the Company in the conduct of the business of the Company as conducted or as proposed to be conducted (a "Competing Business"), nor will Employee engage in any other activities that conflict with his . . . obligations to the Company.

62. Paragraph 12 of the Bussanich Non-Disclosure provides:

> Non-Solicitation. During the term of his . . . employment by the Company[Green Ballast] and for a period of one (1) year after the date of his . . .

10

employment with the Company ends for any reason, Employee [Bussanich] will not, directly or indirectly, (a) hire, engage or solicit to hire or engage any individual who is engaged as a contractor or consultant or employed by the company or who was engaged as a contractor or consultant or employed by the company within six months of the proposed solicitation, hire or engagement, (b) otherwise induce or attempt to induce any individual who is engaged as a contractor or consultant or employed by the company to terminate such engagement or employment, (c) in any way interfere with the relationship between the Company and any individual who is engaged as a contractor or consultant or employed by the company; (d) contact, solicit, divert, appropriate or call upon with the intent of doing business with (other than for the exclusive benefit of the Company) any customer of the company if the purpose of such activity is to solicit such customer or prospective customer for a Competing Business, to encourage such customer to discontinue, reduce or adversely alter the amount of such customer's business with the company or to otherwise interfere with the Company's relationship with such customer, or (e) in any way interfere with the Company's relationship with any supplier, manufacturer, service provide or other business relation of the Company.

63. Injunctive Relief. Employee [Bussanich] acknowledges and agrees that failure to adhere to the terms of this Agreement will cause the Company [Green Ballast] irreparable damage for which monetary damages alone would be inadequate compensation. Therefore, Employee agrees that in addition to monetary damages, the Company will be entitled to an injunction and other equitable relief, including *ex parte* injunctive relief, in the event of any breach or threatened breach (such threatened breach being determined in the sole judgment of the company) of the provisions of this Agreement. Employee waives the making of a bond or showing actual damages as a condition for obtaining injunctive relief. Such remedy shall not be deemed the exclusive remedy for the breach of this Agreement by Employee, but will be in addition to all other remedies whether at law or in equity to the Company. Additionally, if Employee breaches this Agreement, the Company will be entitled to its reasonable attorney's fees and costs associated with enforcing this Agreement. Notwithstanding any judicial determination that any provision of this Agreement is not specifically enforceable, the Company will nonetheless be entitled to recover monetary damages as a result of any breach by Employee.

64. On or about July 13, 2013, Bussanich essentially resigned his employment with Green Ballast.

65. Upon information and belief, Bussanich has violated the Bussanich Non-Compete by competing with Green Ballast by soliciting sales from some or all of Green Ballast's customers or potential customers.

11

66.  Upon information and belief Bussanich has communicated, transmitted and/or published Confidential Information and statements he knew were untrue in violation of the Bussanich Non-Disclosure.

67.  Green Ballast has suffered and continues to suffer irreparable damages from the conduct of Defendants.

68.  There is no adequate remedy at law to compensate Green Ballast caused by and continuing to be caused by the Defendants.

### III. CAUSES OF ACTION

69.  <u>Breach of Contract – Bethell</u>.

   A.  Bethell is liable to Green Ballast for his breach of the Bethell Non-Compete.

   B.  Bethell is liable to Green Ballast for his breach of the Bethell Non- Disclosure.

   C.  Bethell is liable to Green Ballast for breach of his agreement to voluntarily resign as Chief Financial Officer of Green Ballast.

70.  <u>Breach of Contract – Bussanich</u>.

   A.  Bussanich is liable to Green Ballast for his breach of the Bussanich Non-Compete.

   B.  Bussanich is liable to Green Ballast for his breach of the Bussanich Non-Disclosure.

71.  <u>Conspiracy.</u>

   A.  Upon information and belief, Bethell has conspired with Bussanich, GNAC and other unknown John Does, each with knowledge of the other's intent, to deprive and/or interfere with Green Ballast's business, its customers, its lenders and investors and worked in concert to do so.

B.   Upon information and belief, Bussanich has conspired with Bethell, GNAC and other unknown John Does, each with knowledge of the other's intent, to deprive and/or interfere with Green Ballast's business, its customers, lenders and investors and worked in concert to do so.

C.   Upon information and belief, GNAC has conspired with Bethell, Bussanich and other unknown John Does, each with knowledge of the other's intent, to deprive and/or interfere with Green Ballast's business, its customers, lenders and investors and worked in concert to do so.

D.   Upon information and belief, unknown John Does have conspired with Bethell, Bussanich and GNAC, each with knowledge of the other's intent, to deprive and/or interfere with Green Ballast's business, its customers, lenders and investors and worked in concert to do so.

72.   <u>Tortious Interference with Business Relationship -- Bethell.</u>

A.   Upon information and belief, Bethell has intentionally interfered with business relationships between Green Ballast and its employees.

B.   Upon information and belief, Bethell has intentionally interfered with business relationships between Green Ballast and its independent contractors.

C.   Upon information and belief, Bethell has intentionally interfered with business relationships between Green Ballast and its investors.

D.   Upon information and belief, Bethell has intentionally interfered with business relationships between Green Ballast and its lender or lenders.

E.   Upon information and belief, Bethell has intentionally interfered with business relationships between Green Ballast and its potential investors.

F.   Upon information and belief, Bethell has intentionally inferred with business relationships between Green Ballast and its vendors.

73.   <u>Tortious Interference with Business Relationship -- Bussanich.</u>

A.  Upon information and belief, Bussanich has intentionally interfered with business relationships between Green Ballast and its employees.

B.  Upon information and belief, Bussanich has intentionally interfered with business relationships between Green Ballast and its independent contractors.

C.  Upon information and belief, Bussanich has intentionally interfered with business relationships between Green Ballast and its investors.

D.  Upon information and belief, Bussanich has intentionally interfered with business relationships between Green Ballast and its lender or lenders.

E.  Upon information and belief, Bussanich has intentionally interfered with business relationships between Green Ballast and its potential investors.

F.  Upon information and belief, Bussanich has intentionally interfered with business relationships between Green Ballast and its vendors.

74.  Tortious Interference with Business Relationship – John Does.

A.  Upon information and belief, John Does have intentionally interfered with business relationships between Green Ballast and its employees.

B.  Upon information and belief, John Does have intentionally interfered with business relationships between Green Ballast and its investors.

C.  Upon information and belief, John Does have has intentionally interfered with business relationships between Green Ballast and its lender or lenders.

D.  Upon information and belief, John Does have intentionally interfered with business relationships between Green Ballast and its potential investors.

E.  Upon information and belief, John Does have intentionally interfered with business relationships between Green Ballast and its vendors.

75.  Tortious Interference with Business Relationship -- GNAC.

    A.    Upon information and belief, GNAC has intentionally interfered with business relationships between Green Ballast and its employees.

    B.    Upon information and belief, GNAC has intentionally interfered with business relationships between Green Ballast and its investors.

    C.    Upon information and belief, GNAC has intentionally interfered with business relationships between Green Ballast and its lender or lenders.

    D.    Upon information and belief, GNAC has intentionally interfered with business relationships between Green Ballast and its potential investors.

    E.    Upon information and belief, GNAC has intentionally interfered with business relationships between Green Ballast and its vendors.

76.    <u>Tortious Inducement or Procurement of Breach of Contract pursuant to T.C.A. §47-50-109 – All Defendants</u>

    A.    T.C.A. §47-50-109 provides:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach for such damages.

    B.    Upon information and belief, Bethell has induced or procured breach of contracts with Green Ballast employees.

    C.    Bethell is liable to Green Ballast for treble damages.

    D.    Upon information and belief, Bussanich has induced or procured breach of contracts with Green Ballast employees.

    E.    Bussanich is liable to Green Ballast for treble damages.

    F.    Upon information and belief, GNAC has induced or procured breach of contracts with Green Ballast employees.

  G. GNAC is liable to Green Ballast for treble damages.

  H. Upon information and belief, John Does induced or procured breach of contracts with Green Ballast employees.

  I. John Does are liable to Green Ballast for treble damages.

77. <u>Breach of Fiduciary Duty.</u>

  A. T.C.A. §48-18-301 provides:

(a) A director shall discharge all duties as a director, including duties as a member of a committee:
(1) in good faith;
(2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
(3) in a manner the director reasonably believes to be in the best interest of the corporation

  B. Bethell is liable to Green Ballast for failure to discharge his discretionary duties in good faith, with the care an ordinarily prudent person as a Director of Green Ballast would exercise under similar circumstances; and in a manner he should have reasonably believed to be in the best interest of Green Ballast.

  C. T.C.A. § 48-18-403(a)(1)-(3) provides

(a) An officer with discretionary authority shall discharge all duties under that authority:
(1) In good faith;
(2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
(3) In a manner the officer reasonably believes to be in the interest of the corporation.

  D. Bethell is liable to Green Ballast for failure to discharge his discretionary duties in good faith, with the care an ordinarily prudent person as the Chief Financial Officer of Green Ballast would exercise under similar circumstances, and in a manner he should have reasonably believed to be in the best interest of Green Ballast.

E.  Bussanich is liable to Green Ballast for failure to discharge his discretionary duties in good faith, with the care an ordinarily prudent person as the Vice President of Business Development of Green Ballast would exercise under similar circumstances, and in a manner he should have reasonably believed to be in the best interest of Green Ballast.

78.  <u>Breach of Duty of Loyalty.</u>

A.  Bethell is liable to Green Ballast for his failure to exercise his duty of loyalty to Green Ballast both as an Officer and Director of Green Ballast.

B.  Bussanich is liable to Green Ballast for his failure to exercise his duty of loyalty to Green Ballast as a Vice President of Green Ballast.

79.  <u>Defamation.</u>

A.  Bethell is liable to Green Ballast for defamation.

B.  Bussanish is liable to Green Ballast for defamation.

## IV. RELIEF

**WHEREFORE, PREMISES CONSIDERED, Green Ballast Prays that**

80.  This Court grant a Temporary Restraining Order pursuant to F.R.C.P. 65(b) concurrently with this Complaint prohibiting Bethell, Bussanich, and any member, officer, director or employee of GNAC, LLC from:

A.  Calling on, speaking with, or other wise communicating with,

1.  any current, former or potential client of Green Ballast;
2.  any current or former employee of Green Ballast;
3.  any current, former or potential investor of Green Ballast;
4.  any current, former or potential vender of Green Ballast.

81.  The Court grant a permanent injunction prohibiting Bethell, Bussanich, and any member, officer, director or employee of GNAC, LLC from:

17

      A.     Calling on, speaking with, or otherwise communicating with

           1.     any current, former or potential client of Green Ballast;

           2.     any current or former employee of Green Ballast;

           3.     any current, former or potential investor of Green Ballast;

           4.     any current, former or potential vendor of Green Ballast

for a period of one (1) year.

82. That Green Ballast be awarded a money judgment against each of the Defendants, jointly and severally in an amount not less than $3,500,000.00

83. That Green Ballast be awarded a money judgment against Defendants jointly and severally for treble damages.

84. That Green Ballast be awarded punitive damages in amount sufficient to deter Defendants from committing such wrongs in the future.

85. That Green Ballast be awarded its attorney's fees and costs pursuant to the terms of the Bethell Non-Compete, the Bussanich Non-Compete, the Bethell Non-Disclosure and the Bussanich Non-Disclosure;

86. Any additional and further relief to which Green Ballast may prove it is entitled.

Respectfully submitted,

/s/ Robin H. Rasmussen
Robin H. Rasmussen 16865
Peter D. Baskind 19962
DINKELSPIEL RASMUSSEN & MINK, PLLC
1669 Kirby Parkway, Suite 106
Memphis, TN 38120
(901) 759-2470
rrasmussen@drmlawmemphis.com
pbaskind@drmlawmemphis.com

## CORPORATE ACKNOWLEDGMENT

(Pursuant to T.C.A. § 66-22-108)

STATE OF TENNESSEE
COUNTY OF SHELBY

I, **J. KEVIN ADAMS**, Chief Executive Officer of GREEN BALLAST, INC., a for-profit Corporation, as an officer, signing on behalf of a Corporation, being first duly sworn, under oath, hereby state that the facts and matters contained in the foregoing Complaint are true and correct to the best of my knowledge, information and belief for the causes mentioned in the Complaint.

_____
J. Kevin Adams
Chief Executive Officer
GREEN BALLAST, INC.

Before me, a Notary Public of the state and county mentioned, personally appeared **J. KEVIN ADAMS**, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be the Chief Executive Officer, an officer authorized to execute the instrument of **Green Ballast, Inc.**, the within named bargainor, a corporation, and that such president or officer, as such Chief Executive Officer, executed the foregoing instrument, and acknowledged that he executed the same for the purposes therein contained, by personally signing in the name of the corporation **Green Ballast, Inc.**

SWORN TO AND SUBSCRIBED before me this ____ day of August, 2013.

_____
Notary Public

My Commission Expires:

5·24·15



K:\Green Ballast\Bill Bethel\PLEADINGS\CORPORATE ACKNOWLEDGMENT.docx